UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM RICHARD FIDUCIA,

                Plaintiff,

v.                                                                1:16-CV-1317
                                                                         (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS             PETER M. MARGOLIUS, ESQ.
 Counsel for Plaintiff
7 Howard Street
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.                  MONIKA K. CRAWFORD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by William Richard Fiducia ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10, 11.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted, and Defendant's motion for judgment on the pleadings is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1955, making him 57 years old at the alleged onset date and 59 years old at the date of the ALJ's decision. Plaintiff reported obtaining his GED. The ALJ found he has past relevant work as a lab technician and CDL driver.[1] Generally, Plaintiff alleges disability due to complications from a knee replacement, hepatitis C, high blood pressure, sleep problems, and right knee arthritis.

### B. Procedural History

Plaintiff applied for Disability Insurance Benefits on April 11, 2013, and Supplemental Security Income on March 21, 2013, alleging disability beginning February 11, 2013. Plaintiff's application was initially denied on June 5, 2013, and on reconsideration on October 9, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a video hearing before ALJ Sheila Walters on April 24, 2015. On May 18, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 29-39.)[2] On August 30, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

---

[1] As Plaintiff notes in his argument, the ALJ classifies Plaintiff's past work as "a CDL driver/dispatcher" when discussing Plaintiff's past relevant work and transferable skills. (T. 38.) The inclusion of dispatcher as part of Plaintiff's past work will be discussed further in the arguments portion of this Decision and Order.

[2] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

C.  The ALJ's Decision

Generally, in her decision, the ALJ made the following nine findings of fact and conclusions of law. (T. 31-39.) First, the ALJ found Plaintiff is insured for disability benefits under Title II until December 31, 2017. (T. 31.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the relevant period. (*Id.*) Third, the ALJ found that Plaintiff's right knee degenerative joint disease with total knee replacement, mild left knee degenerative joint disease, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, degenerative joint disease of the hips, obesity, hepatitis C, chronic liver disease, chronic pain syndrome, and insomnia are severe impairments, while Plaintiff's hypertension and depression are not severe impairments. (T. 31-32.) The ALJ found that Plaintiff additionally had a severe impairment of degenerative joint disease of the left shoulder beginning March 31, 2015. (T. 31.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 33.) Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). (*Id.*) Fifth, the ALJ found that, prior to March 31, 2015, Plaintiff had the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he is able to lift and carry less than ten pounds frequently and ten pounds occasionally; he is able to sit for six hours of an eight hour workday; he is able to stand and/or walk for two hours of an eight hour workday; he is precluded from climbing ladders, ropes, and scaffolds, and from kneeling, crouching and crawling; he is limited to occasional climbing of ramps and stairs.

(T. 33.) Beginning March 31, 2015, the ALJ found Plaintiff has an additional limitation for occasional reaching to the front and overhead. (T. 36.) Sixth, the ALJ found that Plaintiff is unable to perform his past relevant work with the above limitations for either period. (T. 38.)

3

Seventh, the ALJ found that Plaintiff had acquired skills of operation monitoring, critical thinking, monitoring, and assessing from his past work as a CDL driver. (*Id.*) Eighth, the ALJ found that Plaintiff's acquired skills would transfer to work as a dispatcher, which he would be able to perform with the RFC relating to the period prior to March 31, 2015. (T. 31.) Ninth, and finally, the ALJ found that Plaintiff would be unable to perform work as a dispatcher with the RFC beginning March 31, 2015, and therefore was disabled as of that date pursuant to Medical-Vocational Rule 201.06. (T. 39.) The ALJ therefore concluded that Plaintiff was not disabled prior to March 31, 2015, but became disabled as of that date.[3]

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes two arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the Step Five finding for the unfavorable period at issue is not supported by substantial evidence because the ALJ relied on vocational expert testimony regarding transferable skills that was based on an erroneous characterization of Plaintiff's past work. (Dkt. No. 10, at 4 [Pl. Mem. of Law].) More specifically, Plaintiff argues that the his actual past work as a fuel oil driver required less skill than the CDL driver classification identified by the vocational expert, and therefore the vocational expert's testimony as to the transferrable skills resulting from that job might not be reliable based on the erroneous classification of his past work. (*Id.*) Plaintiff also argues that the ALJ's notation that Plaintiff had past work as a "CDL driver/dispatcher" undermines the Step Five finding because Plaintiff

---

[3] Neither party to this appeal challenges the portion of the decision related to the period beginning March 31, 2015, or asserts that the ALJ's finding of disability for the period beginning on that date is not supported by substantial evidence. Because there is no reason to question the ALJ's finding of disability during that period, this Court's decision will focus on the main issue of whether the ALJ erred in finding Plaintiff not disabled at any time prior to that date.

did not work as a dispatcher. (Dkt. No. 10, at 4-5 [Pl. Mem. of Law].) Plaintiff also argues that the job of dispatcher is different in work processes and tools than that of CDL driver/ fuel oil delivery driver and therefore skills acquired from work as a CDL driver/fuel oil delivery driver would not be directly transferrable to work as a dispatcher. (Dkt. No. 10, at 5-6 [Pl. Mem. of Law].)

Second, Plaintiff argues that the ALJ committed reversible error in failing to evaluate the opinion from State Agency medical consultant Dr. Putcha. (Dkt. No. 10, at 6 [Pl. Mem. of Law].)

Generally, Defendant makes two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that there is no evidence that the classification of Plaintiff's past work as CDL driver rather than fuel oil delivery driver would affect the outcome of the ALJ's finding as to transferable skills because there is no evidence or authority that both positions would not require the identified skills. (Dkt. No. 11, at 3-4 [Def. Mem. of Law].) Defendant also argues that work as a dispatcher would not require more than minimal adjustment and therefore the ALJ correctly found that the identified skills were directly transferrable. (Dkt. No. 11, at 5 [Def. Mem. of Law].) Lastly, Defendant argues that the ALJ's erroneous inclusion of dispatcher in the description of Plaintiff's past work is harmless. (*Id.*)

Second, Defendant argues that there was no reversible error in the ALJ's failure to discuss or explicitly weight the State Agency medical consultant's opinion because the ALJ's RFC findings were more restrictive than the limitations opined by that source and therefore consideration of this opinion would not have resulted in any change in the outcome of the decision. (Dkt. No. 11, at 5-6 [Def. Mem. of Law].)

5

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

7

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

III.   **ANALYSIS**

   A.   **Whether the ALJ Committed Harmful Error By Failing to Weigh Opinion Evidence**

After careful consideration, the Court answers this question in the affirmative for the following reasons.

An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When an ALJ's decision is not fully favorable to a claimant, the ALJ must provide specific reasons for the weight given to each treating source's medical opinion, supported by evidence in the case record, and must state the reasons for that weight." *Stytzer v. Astrue*, No. 1:07-CV-0811, 2010 WL 3907771, at *3 (N.D.N.Y. Sept. 30, 2010) (citing SSR 96-2p, 1996 WL 374188 (July 2, 1996)); *Lunan v. Apfel*, No. 98-CV-1942, 2000 WL 287988, at *5 (N.D.N.Y. Mar. 10, 2000)). The regulations also require that the ALJ "'explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist.'" *Campbell v. Astrue*, 713 F. Supp. 2d 129, 140 (N.D.N.Y. 2010) (quoting 20 C.F.R. § 416.927(e)(2)(ii); SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)). This Court has ordered remand where the ALJ has failed to appropriately explain the weight afforded to opinion evidence. *See Jordan v. Comm'r of Soc. Sec.*, No. 8:15-CV-0436, 2016 WL 3661429, at *5 (N.D.N.Y. July 5, 2016) (finding remand necessary where

the ALJ failed to weigh the opinions from two treating physicians); *Campbell*, 713 F. Supp. 2d at 140 (remanding where the ALJ "did not explain why his findings were contrary, discuss [the State Agency physician's] opinions, or give weight to her opinions"); *Duell v. Astrue*, No. 8:08-CV-0969, 2010 WL 87298, at *5 (N.D.N.Y., Jan. 5, 2010) (remanding in part due to the ALJ's failure to explain the weight he afforded to the opinions of various consultative physicians and psychologists).

Plaintiff argues that the ALJ erred in failing to evaluate the opinion from non-examining State Agency medical consultant S. Putcha, M.D., who made the decision for the Agency at the reconsideration stage. (Dkt. No. 10, at 6 [Pl. Mem. of Law]; T. 128-29.) Dr. Putcha opined that, due to expected continued improvement, Plaintiff would be able to perform light work within 12 months after the alleged onset date and therefore would not be disabled for the required duration necessary to merit a grant of benefits. (T. 127-29.) However, as Defendant argues, it is not clear how consideration of Dr. Putcha's opinion would have impacted the ALJ's decision. (Dkt. No. 11, at 5-6 [Def. Mem. of Law].) The ALJ found that, for the entire period from the alleged onset date to the date of the ALJ's decision, Plaintiff was limited to a range of sedentary work. (T. 33, 36.) It therefore appears that the ALJ did not rely on Dr. Putcha's opinion that Plaintiff could perform light work when formulating the RFC. Additionally, Defendant is correct that Plaintiff fails to show how consideration of this opinion would have impacted the outcome of the ALJ's decision since the ALJ accepted limitations that were greater and more restrictive than those opined by Dr. Putcha. This Court and others have recognized that failure to consider or weigh an opinion may be considered harmless error where consideration of that opinion would not have changed the outcome. *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not

9

change the outcome of the claim) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, No. 6:14-CV-0578, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying the request for remand because application of the correct legal standard would not change the outcome); *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose); *see also Blabac v. Comm'r of Soc. Sec.*, No. 3:08-CV-0849, 2009 WL 5167650, at *9 (N.D.N.Y. Dec. 18, 2009) (collecting cases which indicate harmless error where the opinions that the ALJ failed to weigh either did not conflict with the ALJ's findings or written consideration of the opinions would not have changed the outcome of the ALJ's decision). Consequently, even though the ALJ committed legal error in failing to explain what weight she afforded to Dr. Putcha's opinion, this error is harmless because there is no indication that Dr. Putcha's less-restrictive opinion would have turned the outcome closer to a finding of disability for the unfavorable period in the ALJ's decision. Remand is not warranted on this basis.

However, although Plaintiff did not address the point, there is another opinion in the record from a physician that the ALJ failed to weigh in the written decision. On February 28, 2014, Fazil Hussain[4] opined that Plaintiff was limited to lifting, pushing, and pulling five to ten pounds one to ten times per hour for a total of less than one hour, standing, walking and sitting

---

[4] Dr. Hussain's specific credentials are not listed, but he is noted to be a "Hospital Physician – Phase I, Institute for Family Health" in this treatment note, and a license number is provided. (T. 743.) The New York State Office of the Professions confirms that this license number corresponds to a valid state medical license in Dr. Hussain's name. *See License Verifications*, NEW YORK STATE EDUCATION DEPARTMENT OFFICE OF THE PROFESSIONS, http://www.nysed.gov/COMS/OP001/OPSCR2 (last visited Sept. 13, 2017). There is therefore sufficient evidence to show that Dr. Hussain is a physician and therefore an acceptable medical source for the purposes of the Social Security disability analysis.

less than one hour each, no reaching, kneeling, squatting, bending, stooping and crouching, and working in a low stress environment. (T. 743-46.) The record contains only two dates of possible treatment from Dr. Hussain, but even if he was not a treating source, the ALJ was still required to assess his opinion with the rest of the evidence and provide an explanation regarding the weight afforded to his opinion. *See Reider*, 2016 WL 5334436, at *5; *Stytzer*, 2010 WL 3907771, at *3. However, the ALJ did not discuss this opinion or indicate what, if any weight, she afforded to it. (T. 34-36.)

Nor do the reasons the ALJ provided for rejecting the other opinion evidence provide insight into the ALJ's rationale for implicitly rejecting Dr. Hussain's opinion. The ALJ afforded limited weight to the March 2014 less-than-sedentary opinion from treating physician David Drucker, M.D., citing to contradictory evidence from July 2014 and a contradictory statement from Dr. Drucker that Plaintiff could work in a light duty position. (T. 35-36.) However, Dr. Hussain provided his opinion in February 2014, on the same date he observed Plaintiff had moderate tenderness with flexion and extension of the lumbar spine, decreased lumbar spine range of motion, moderate tenderness with motion of the right hip joint, and severe tenderness with motion of the right knee joint. (T. 742.) Although the ALJ is correct that Dr. Drucker's treatment notes showed gradual improvement in Plaintiff's knee condition that seems to undermine the basis for that opinion, Dr. Drucker only treated Plaintiff for his right knee impairment, whereas Dr. Hussain conducted an examination related to Plaintiff's lumbar spine and hip in addition to his knee. Therefore, the ALJ's citations to findings from Dr. Drucker's treatment notes do not adequately explain why Dr. Hussain's opinion would also merit little weight, particularly given his examination from the same date supporting objective physical limitations. The other opinion evidence in the record was variously discounted based on the

11

conclusory nature of statements that Plaintiff was disabled or unable to work, reliance on other opinions the ALJ found unreliable, and a lack of evidence that sources actually provided care to Plaintiff. (T. 36.) None of these reasons would apply to Dr. Hussain's opinion or adequately provide an indication as to how the ALJ would have weighed that opinion or the reasons therefore.

Because Dr. Hussain is an acceptable medical source who examined Plaintiff prior to rendering his opinion, the ALJ's decision does not provide sufficient explanation for this Court to glean the ALJ's reasons for implicitly rejecting his opinion, and his opinion suggests greater limitations than the RFC finding, the ALJ's failure to indicate the weight given to this opinion cannot be considered harmless error. It is the function of the ALJ to make such findings and this Court may not substitute its own findings to remedy the ALJ's omission. *See Bartrum v. Astrue*, 32 F. Supp. 3d 320, 331 (N.D.N.Y. 2012) ("This Court simply cannot, and will not, re-weigh the medical evidence and/or 'create *post-hoc* rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.'") (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005); citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)); *see also Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (quoting *Morgan on behalf of Morgan v. Chater*, 913 F. Supp. 184, 188-89 (W.D.N.Y. 1996)); *Booker v. Astrue*, No. 1:07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d

Cir. 1984)).  Consequently, remand is merited for the ALJ to provide a proper consideration of Dr. Hussain's opinion according the regulatory standards and explanation as to whether that opinion would alter the RFC and other findings.

### B. Whether the Step Five Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons in Defendant's memorandum of law, with the exceptions noted below.  (Dkt. No. 11, at 3-5 [Def. Mem. of Law].)  To those reasons, the Court adds the following analysis.

First, Plaintiff argues that the vocational expert (whose testimony the ALJ relied on to support the Step Five finding) incorrectly classified Plaintiff's past relevant work as CDL driver rather than fuel oil delivery driver, and that this erroneous classification invalidates the vocational expert's testimony regarding transferable skills acquired in that past work.  (Dkt. No. 10, at 4-5 [Pl. Mem. of Law].)  However, Plaintiff's assertion that his past work should have been classified as fuel oil delivery driver rather than CDL driver is based on nothing other than his citation to his own report of his job history.  (Dkt. No. 10, at 4 [Pl. Mem. of Law]; T. 268.)  Notably, neither of the State Agency decision-makers at the initial or reconsideration levels classified Plaintiff's work as a fuel oil delivery driver, and no other vocational source has contradicted the vocational expert's classification.  (T. 107-08, 129.)  Additionally, in his more detailed work history report, Plaintiff noted that, in addition to his trucking jobs delivering gasoline, he also worked in a truck driving job in 2003 and 2004 in which he delivered supplies to a warehouse and loaded and unloaded the products in his truck.  (T. 295.)  Earnings records show a job with Professional Employer Consulting in 2003 and 2004 that appears to correspond to this work, and earnings in that position were above the threshold of substantial gainful activity

13

("SGA").[5] (T. 257-58.) Because this job was performed within the previous 15 years, for long enough to learn the job based on the specific vocational preparation ("SVP") classification of the job,[6] and for SGA, it was properly classified as past relevant work. *See* SSR 82-62, 1982 WL 31386 (1982). The vocational expert had this work history report when determining the classification of Plaintiff's past work. Plaintiff has not shown any evidence that persuasively indicates the vocational expert's use of the more broad classification of CDL driver rather the fuel oil delivery driver is legally erroneous.

Second, Plaintiff argues that the ALJ's classification of Plaintiff's past relevant work as "CDL driver/dispatcher" in the written decision is erroneous because Plaintiff never worked as a dispatcher. (Dkt. No. 10, at 4-5 [Pl. Mem. of Law].) While Plaintiff is correct that the ALJ mistakenly included dispatcher in the section related to his past work, Plaintiff fails to show how this mistake was harmful. The vocational expert's testimony at the hearing makes clear that the identified transferable skills came from Plaintiff's work as a CDL driver. (T. 61.) Consequently, because these skills remain supported by the vocational expert's testimony regardless of the ALJ's mistake in decision-writing, the ALJ's mischaracterization of the past work in the decision

---

[5] The monthly substantial gainful activity threshold amount was $800 in 2003 and $810 in 2004. *See Substantial Gainful Activity*, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/oact/cola/sga.html (last visited Sept. 13, 2017). Plaintiff's earnings in the relevant job were $20,227.05 in 2003 and $7,464 in 2004. (T. 257-58.)

[6] The Dictionary of Occupational Titles uses the SVP system to indicate how much time it takes a typical worker to learn the techniques and information to perform each listed job, and notes that a job with an SVP of four (as CDL driver is classified) must be performed over three months up to and including six months in order to be properly learned. *See Dictionary of Occupational Titles*, Appendix III (Dept. of Labor, 2003). Plaintiff reported he worked in this job from October 2003 to April 2004, which would suggest he performed this specific job for at least three months as required to learn an SVP four job. (T. 268.)

is harmless at best. *Cottrell*, 206 F. Supp. 3d at 810; *Camarata*, 2015 WL 4598811, at *16; *Ryan*, 650 F. Supp. 2d 217; *see also Blabac*, 2009 WL 5167650, at *9.

Third, Plaintiff argues that the skills from the CDL driver job would not be directly transferable to work as a dispatcher because the work as a dispatcher requires different work processes and tools. (Dkt. No. 10, at 5-6 [Pl. Mem. of Law].) The merits of this question need not be decided here, as the ALJ's failure to properly weigh all the opinion evidence in the record raises questions as to the supportability of the RFC finding that would ultimately require reconsideration on remand of whether Plaintiff would be able to perform the exertional and non-exertional demands of work as a dispatcher apart from the issue of transferable skills. However, this Court does note that the evidence on this point is not entirely clear, as the vocational expert testified in a rather vague manner that the work processes of a CDL driver and a dispatcher were "similar but different."[7] (T. 92.)

Consequently, although this Court finds the ALJ's findings related to Plaintiff's past relevant work and transferable skills are supported by substantial evidence, it will be necessary for the ALJ to reconsider the ultimate outcome at Step Five based on the failure to discuss or explain the weight afforded to relevant opinion evidence. On remand, the ALJ should consider

---

[7] Defendant cites to the O*NET, a source that provides more detailed information about the jobs outlined in the D.O.T., in order to argue that work as a dispatcher would not require more than minimal vocational adjustment in terms of tools used. (Dkt. No. 11, at 5 [Def. Mem. of Law].) However, as this Court has noted previously, O*NET is not listed as one of the sources of which the agency takes administrative notice. *See Reisinger v. Comm'r of Soc. Sec.*, No. 7:16-CV-0428, 2017 WL 2198965, at *3 n.4 (N.D.N.Y. May 18, 2017); *see also Ryan*, 650 F. Supp. 2d at 218 (noting that there is no requirement that a vocational expert's testimony be consistent with the O*NET). Given the somewhat vague nature of the vocational expert's testimony and the need for remand based on other grounds, further clarification by a vocational expert would be more prudent than relying on Defendant's citations to the O*NET characterizations of the job at issue.

whether any changes in the RFC finding as a result of proper consideration of all the opinion evidence would prevent Plaintiff from performing work using his transferable skills during the period prior to March 31, 2015. Additionally, if it is determined that Plaintiff retains the RFC to perform the dispatcher position after considering Dr. Hussain's opinion with the record as a whole, the ALJ should solicit additional testimony from a vocational expert to provide further clarification as to the degree of adjustment in terms of work processes and tools that would be required for performance of that position.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that this matter be REMANDED for further administrative proceedings consistent with this Decision and Order pursuant to Sentence Four of 42 U.S.C. 405(g).

Dated: October 10, 2017
Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge